IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF MISSISSIPPI
SOUTHERN DIVISION

**KAYE ANTIS**                                                                                        **PLAINTIFF**

**v.**                                                      **CAUSE NO. 1:24-cv-301-LG-RPM**

**SIRIUSPOINT SPECIALTY
INSURANCE CORPORATION;
INTERNATIONAL MEDICAL
GROUP, INC.**                                                               **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER
GRANTING [8] MOTION TO DISMISS**

This matter arises from an insurance contract between the Plaintiff Kaye Antis, her late husband Phil Antis, and SiriusPoint Specialty Insurance Corporation("SiriusPoint"). Defendants, SiriusPoint and International Medical Group, Inc. ("IMG"), seek dismissal for lack of personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3). In the alternative they request a transfer of the action to the most appropriate venue. For the reasons stated below the Court lacks personal jurisdiction over Defendants and must dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

**BACKGROUND**

On August 22, 2023, Plaintiff and Phil purchased international travel insurance Policy No. GHSS083973729 ("the Policy") from SiriusPoint. The Policy covers medical events outside of the insureds' country of residence—the United States. Plaintiff alleges that on August 31, 2023, while in the Cayman Islands, Phil

suffered a medical event that required hospitalization until September 6, 2023.[1] Phil then was medically evacuated by air transport to the United States for further care and treatment. Plaintiff alleges she notified the defendants, satisfied all condition precedents, and filed a claim for reimbursement of the medical and related expenses incurred during the effective policy period. The Policy period began on August 22, 2023, and expired on September 7, 2023. The plaintiff alleges that Defendants denied the claim because of Phil's preexisting conditions.

Plaintiff filed this lawsuit on October 1, 2024, and alleges that the defendants wrongfully denied Plaintiff's claim without justification or basis. The Plaintiff invokes the Court's diversity jurisdiction and alleges claims of breach of contract, bad-faith denial, negligence, and gross negligence. Plaintiff alleges the expenses associated with the medical event and treatment total approximately $66,217.19. Additionally, Plaintiff seeks actual, emotional, consequential, and punitive damages; attorneys' fees; and any other legal or equitable relief the Court finds her entitled to.

## PERSONAL JURISDICTION

Defendants moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). "The plaintiff bears the burden of establishing

---

[1] The Court notes that the parties do not dispute the medical events started on August 31, 2024, and lasted until September 6, 2024. Considering that the Expiration date of the Policy occurred on September 7, 2023, and Plaintiff alleges that the Policy was in effect at all relevant times herein, the Court will assume that the parties made a simple scrivener's error and regards the dates as occurring in 2023. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citation omitted) ("[R]elevant factual disputes will be resolved in plaintiffs' favor.").

jurisdiction but need only present *prima facie* evidence." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *see Diece-Lisa Indus. v. Disney Enters.*, 943 F.3d 239, 249 (5th Cir. 2019). There is no preponderance of the evidence requirement. *Gatte v. Dohm*, 574 F. App'x 327, 330 (5th Cir. 2014) (citation omitted). "[R]elevant factual disputes will be resolved in plaintiffs' favor[,]" *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citation omitted), and the Court may consider the entire record when considering a motion to dismiss for lack of personal jurisdiction. *See Revell*, 317 F.3d at 469. "Nevertheless, the court is not required to credit conclusory allegations even if they are uncontroverted." *Bar Grp. LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 535 (S.D. Tex. 2017) (citation omitted).

"A federal court sitting in diversity in [Mississippi] may exercise personal jurisdiction over a foreign defendant if permitted by (1) the [Mississippi] long-arm statute, and (2) the due process clause of the Fourteenth Amendment." *Diece-Lisa Indus.*, 943 F.3d at 249. Because "[t]he Mississippi long-arm statute is not coextensive with federal due process," the Court must analyze "the scope of the reach of the statute itself." *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997) (citation omitted).

### A. MISSISSIPPI'S LONG-ARM STATUTE

The Mississippi long-arm statute provides:

> Any nonresident . . . foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of

3

> work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57. "The Mississippi Supreme Court has observed that the long-arm statute only applies when there is a 'nonresident corporation . . . [that] is not a corporation qualified to do business in this state' that falls under the contract, tort, or 'doing business' prong of the statute." *Etienne v. Wartsila N. Am., Inc.*, 667 F. Supp. 235, 242 (S.D. Miss. 2023) (alteration original) (quoting *Est. of Jones v. Phillips ex rel. Phillips*, 992 So. 2d 1131, 1138 (Miss. 2008)). The parties dispute whether the alleged acts fall under the contract prong of the statute.[2]

### 1. IMG

Plaintiff has not provided evidence that IMG was a party to the contract. The Declaration page, which is part of the contract between SiriusPoint and Plaintiff, labels IMG "*as agent for the Insurer*[.]" Pl's. Ex. [1-1] at 2 (emphasis added). The Insurance Certificate states only SiriusPoint "promises and agrees to provide the Insured Person with the benefits described in the Master Policy" which was "in consideration of the . . . Insured Person's Application and payment of Premium[.]" *Id.* at 11.[3] The Certificate later states that IMG "does not have, and shall not be deemed, considered or alleged to have any, direct, indirect, joint, several, separate, individual, or independent liability, responsibility or obligation of any kind under the" Policy. *Id.* at 34.

---

[2] Plaintiff, who has the burden for proving personal jurisdiction, did not allege personal jurisdiction under the other Mississippi long-arm statute prongs.
[3] The Insurance Certificate attached provides a description of the contract but "is not part of the insurance contract." Pl's. Ex. [1-1] at 11.

4

The Court will not entertain the unlikely inference that an insurance agent is a contracting party when, as here, the Declaration, and the Certificate, identifies SiriusPoint as the sole entity making obligations to the insureds. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Thus, it appears that IMG is not a party to the contract, did not "make a contract with a resident of this state[,]" and falls outside the long-arm statute's contract prong. *See* Miss. Code Ann. § 13-3-57. The Court will therefore dismiss IMG for lack of personal jurisdiction pursuant to Rule 12(b)(2). *See Diece-Lisa Indus.*, 943 F.3d at 249.

### 2. SIRIUSPOINT

The Policy does not mention Mississippi, but one provision requires the Plaintiff:

> to sign an Authorization for Release of Medical Information to request medical records on their behalf or supply us with additional documentation . . . . The [Plaintiff] and/or Physician, Hospital and other healthcare and medical service providers shall have sixty (60) days from the date of the request to submit the requested information.

Pl's. Ex. [1-1] at 12. Although a stretch, Plaintiff argues that such a provision could ultimately involve requests for Mississippi medical records or information. Assuming arguendo, that Plaintiff has made a prima facie showing that SiriusPoint is amenable to jurisdiction under the Mississippi long-arm statute, the Court nevertheless finds that exercising personal jurisdiction over SiriusPoint would not comport with the limits imposed by the Due Process Clause of the Fourteenth Amendment. *See Burney v. Allen Auto., Inc.*, No. 1:23-cv-283-TBM-RPM, 2024 WL 4310877, at *3 (S.D. Miss. Sept. 26, 2024) (citations omitted).

B. DUE PROCESS

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citation omitted). "Federal due process is satisfied if two requirements are met: (1) the non-resident purposely availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the state; and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Diece-Lisa Indus.*, 943 F.3d at 249–250 (internal quotations and citation omitted); *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The nonresident defendant should have sufficient contacts with the forum state, such that it "reasonably anticipate[s] being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The minimum contact analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. This case turns on SiriusPoint's relationship with Mississippi, and the burden is on Plaintiff to demonstrate that SiriusPoint has minimum contacts with Mississippi. *See Fielding*, 415 F.3d at 424. SiriusPoint's ties to Mississippi, "must be ties that 'the defendant [itself] purposefully forged.'" *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (quoting *Diece-Lisa Indus.*, 943 F.3d at 250). The analysis is "fact-intensive and no single contact is decisive[.]" *Bar Grp. LLC*, 215 F. Supp. 3d at 537 (citations omitted).

These minimum contacts "may give rise to either general or specific jurisdiction." *Diece-Lisa Indus.*, 943 F.3d at 250.

The plaintiff alleges the Court has specific jurisdiction and identifies the following contacts: the parties contracted with each other, and Defendants "plainly direct, market, advertise, and offer their activities towards Mississippi by offering residents here medical travel insurance . . . and making same available for purchase online."[4] Pl's. Mem. [13] at 3.

The Fifth Circuit applies a three-step test to determine specific personal jurisdiction: "(1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). "If a plaintiff establishes the first two prongs, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable." *E. Concrete Materials, Inc. v. ACE Am. Ins.*, 948 F.3d 289, 296 (5th Cir. 2020). The Court will address each alleged contact in turn.

---

[4] Additionally, the record reveals that SiriusPoint has a designated agent for service of process in Mississippi. *See Walden*, 571 U.S. at 285 (citation omitted) (finding relevant contact includes registered agents). While registered agents are a relevant contact, Mississippi rejects consent jurisdiction and "prohibits a finding of personal jurisdiction merely because of the appointment and maintenance of a registered agent." *K&C Logistics, LLC v. Old Dominion Freight Line, Inc.*, 374 So. 3d 515, 525 (Miss. 2023); *cf. Mallory v. Norfolk S. Ry Co.*, 600 U.S. 122, 137 (2023).

1. **CONTACTS**

"The Supreme Court has long held that an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 544 (5th Cir. 2019) (emphasis and alteration original) (internal quotations and citation omitted). Further, the Supreme Court "long ago rejected the notion that personal jurisdiction might turn on mechanical tests, or on conceptualistic . . . theories of the place of contracting or of performance." *Burger King Corp. v. Ruzewicz*, 471 U.S. 462, 478–79 (1985) (cleaned up). "[W]hen specific personal jurisdiction is grounded on contractual relations, lower courts must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine 'whether the defendant purposefully established minimum contacts within the forum.'" *Shambaugh & Son, L.P. v. Steadfast Ins.*, 91 F.4th 364, 373 (5th Cir. 2024) (quoting *Burger King*, 471 U.S. at 479). This analysis is a "highly realistic" assessment, and a "touchstone of this analysis is the 'place of contractual performance.'" *Sayers Const., L.L.C. v. Timberline Const., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992)).

Here the contract's connection with Mississippi is tenuous at best. The Policy was "issued, finalized and made" in Indiana—not Mississippi. Pl's. Ex. [1-1] at 12. *See Burger King*, 471 U.S. at 479. Based on the record, most of the Policy is for

medical events outside of the United States—not Mississippi. The only contact SiriusPoint makes with Mississippi in the contract, apart from contracting with a Mississippi resident, is that it requires the insureds to "sign an Authorization for Release of Medical Information to request medical records on their behalf . . . . The Insured Person, and/or Physician, Hospital and other healthcare and medical service providers and suppliers shall have sixty (60) days from the date of the request to submit the requested information." Pl's. Ex. [1-1] at 12. These are the only terms that may potentially implicate contact with Mississippi. *See Shambaugh & Son, L.P.*, 91 F.4th at 373. Again, the majority of terms regarding activity in the United States between SiriusPoint and the Plaintiff refer to Indiana. *See* Pl's. Ex. [1-1] at 12–13. There is no actual course of dealing in the record that shows SiriusPoint acted in Mississippi. Finally, most contractual performance occurs outside of Mississippi.

  The plaintiff alleges that her premium payments from her Mississippi residences also creates a contact and part performance for the contract. *See* Pl's. Mem. [13] at 2. The Policy is silent as to the place of payment, so "the payor is generally obligated to render payment at the place the contract was made[,]" which is Indiana. *See Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 618 (5th Cir. 1989); *Walden*, 571 U.S. at 285 (citation omitted) ("[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be" decisive.). The possibility of Defendants requiring information from medical records in Mississippi to determine the insurance claim is thus not a "substantial connection" required for

9

minimum contacts. *See Burger King*, 471 U.S. at 475 n.18. Consequently, the contract fails the first step of the Fifth Circuit's specific jurisdiction test because SiriusPoint did not purposefully direct minimum contact towards Mississippi. *See ITL Int'l, Inc.*, 669 F.3d at 498.

### 2. THE INTERNET

The Fifth Circuit uses "the *Zippo* test to determine whether a defendant has purposefully availed itself of the forum state through its internet presence." *Monistere v. Losauro*, No. 13-22, 2013 WL 6383886, at *5 (E.D. La. Dec. 4, 2013) (citing *Mink v. AAAA Dev. L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999).[5] "[I]nternet-based jurisdictional claims must continue to be evaluated on a case-by-case basis, focusing on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 n.7 (5th Cir. 2012).

---

[5] The *Zippo* test is as follows:

> At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states *which involve the knowing and repeated transmission of computer files over the Internet.* In this situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website.

*Mink*, 190 F.3d at 336 (emphasis added) (cleaned up) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Plaintiff does not allege that she purchased the Policy online, contracted with SiriusPoint online, or that there was "knowing and repeated transmission of computer files over the Internet." *See Mink*, 190 F.3d at 336 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Instead, she alleges that the defendants "plainly direct, market, advertise, and offer their activities toward Mississippi by offering residents here medical travel insurance . . . and making same available for purchase online[.]" Pl's. Mem. [13] at 3. Therefore, SiriusPoint's website falls into the middle of the *Zippo* spectrum, and the Court must determine the "level of interactivity and commercial nature of" SiriusPoint's website. *See Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124).

"Missing here is any showing that [Defendants'] website specifically targets [Mississippi]." *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787 (5th Cir. 2021). The *Admar* court held that there "was no jurisdiction because there was no evidence the defendant had 'targeted' the forum state." *See CAP Barbell, Inc. v. HulkFit Prods., Inc.*, No. H-22-2371, 2023 WL 2247057, at *4 (S.D. Tex. Feb. 27, 2023).[6] "An interactive website does not confer jurisdiction in cases when the

---

[6] District courts disagree whether *Admar*'s holding includes the lack of online sales or contract to a forum state resident. *Compare CAP Barbell, Inc. v. HulkFit Prods., Inc.*, No. H-22-2371, 2023 WL 2247057, at *4 (S.D. Tex. Feb. 27, 2023), *and Brainstorm XX, LLC v. Wierman*, No. 4:21-CV-584-SDJ, 2022 WL 4387858, at *4–5 (E.D. Tex. Sept. 22, 2022), *and Trahan v. Vivis Corp*, No. 6:22-CV-00152, 2022 WL 1221343, at *4 (W.D. La. Feb. 25, 2022) *report and recommendation adopted*, No. 6:22-cv-00152, 2022 WL 1214498 (W.D. La. Apr. 25, 2022), *with AT&T Mobility LLC v. T-Mobile USA Inc.*, No. 4:22-cv-00760, 2023 WL 186809, at *6 (E.D. Tex. Jan. 13, 2023), *and Best Glide Aviation Survival Equip., Inc. v. Tag-Z, LLC*, No. 1:23-cv-1080-DAE, 2024 WL 3488129, at *4 (W.D. Tex. Jul. 19, 2024).

11

website does not distinguish the forum state from any other state." *Id.* (citing *Admar*, 18 F.4th at 787); *see generally Revell*, 317 F.3d at 473 (reasoning an accessible online article in Texas "was not directed at Texas readers as distinguished from readers in other states"). When "there are no allegations that the defendants singled out [state] residents as potential customers on the defendants' online sales platforms[,]" there is not targeted contact under *Zippo*. *CAP Barbell*, 2023 WL 2247057, at *5. Furthermore, "[a] corporation's sales to forum residents must be more than 'isolated' occurrences for the assertion of jurisdiction[.]" *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 228 (5th Cir. 2012) (quoting *Burger King*, 471 U.S. at 475 n.18).

Apart from the assertion that Defendants advertise and allow Mississippi residents to purchase insurance online, Plaintiff does not allege facts that SiriusPoint specifically targeted Mississippi residents. *See Admar*, 18 F.4th at 787. Similar to *CAP Barbell*, SiriusPoint has no physical presence in Mississippi. *See*

---

The case here is closer to *CAP Barbell*, *Trahan*, and *Tag-Z*, since the defendants lack a physical presence in the forum state. *See* 2023 WL 2247057, at *3; 2022 WL 1221343, at *1; 2024 WL 3488129, at *1. In contrast, in *AT&T*, the defendant had additional and physical ties to Texas, including "hundreds of retail stores and a corporate office." 2023 WL 186809, at *6. The Court finds the *CAP Barbell*, *Trahan*, and *Brainstorm XX* decisions persuasive and that, "sporadic internet sales, on their own, do not support jurisdiction." 2022 WL 4387858, at *5 (citation omitted); *see* 2022 WL 1221343, at *4. *Tag-Z* is not persuasive because in that case, there were at least twenty-eight orders involving forum state residents. 2024 WL 3488129, at *4. This case aligns more closely with *Brainstorm XX*'s two sales and *Trahan*'s four online sales because here, there is one arguable purchase from forum state residents: Plaintiff and Phil. *See* 2022 WL 4387858, at *1; 2022 WL 1221343, at *4. "The Internet is premised on the lack of territorial limits. Personal jurisdiction works just the opposite." *Admar Int'l Inc. v. Eastrock L.L.C.*, 18 F.4th 783, 788 (5th Cir. 2021).

12

2023 WL 2247057 at *3. No facts distinguish Mississippi insurance customers from customers in other states. *See Revell*, 317 F.3d at 473. Even if Plaintiff purchased the Policy online, which is not alleged by the plaintiff, it still is an isolated purchase. *See Pervasive*, 688 F.3d at 228; *Brainstorm XX, LLC v. Wierman*, No. 4:21-CV-584-SDJ, 2022 WL 4387858 *4–5 (E.D. Tex. Sept. 22, 2022) (citations omitted) ("[S]poradic internet sales, on their own, do not support personal jurisdiction.").

The Court will not "credit conclusory allegations" that SiriusPoint regularly targets and sells insurance to Mississippi residents "even if they are uncontroverted." *See Bar Grp. LLC*, 215 F. Supp. 3d at 535 (citation omitted). The plaintiff fails to establish that the website specifically targets Mississippi residents. Under the *Zippo* test, the Court finds that SiriusPoint did not purposefully avail itself of Mississippi's laws through its contacts. SiriusPoint does not have the minimum contacts required for specific personal jurisdiction, and the Court cannot exercise jurisdiction over SiriusPoint. *See ITL Int'l, Inc.*, 669 F.3d at 498.[7]

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [8] Motion to Dismiss filed by SiriusPoint and IMG is **GRANTED**, and Plaintiff's claims are hereby **DISMISSED** without prejudice.

---

[7] The Court need not address whether personal jurisdiction would offend traditional notions of fair play and substantial justice because the plaintiff failed to establish minimum contacts. *See Renoir v. Hantman's Assocs., Inc.*, 230 F. App'x 357, 360 (5th Cir. 2007). The Court also will not address the parties' arguments over improper venue and the contract's forum selection clause, as the Court lacks jurisdiction.

13

**SO ORDERED AND ADJUDGED** this the 11th day of February, 2025.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.

UNITED STATES DISTRICT JUDGE